ELLIS, Judge.
This is a suit for workmen’s compensation benefits for total and permanent disability. Plaintiff is Clifton Telsa, and defendant is Bituminous Casualty Corporation, the workmen’s compensation insurer of Campbell Construction Company, plaintiff’s employer. After trial on the merits, judgment was rendered in favor of defendant, dismissing plaintiff’s demands, and plaintiff has appealed.
Plaintiff was employed by Campbell as a truck driver and heavy equipment operator. On September 22, 1971, he was involved in a vehicular accident while in the course and scope of his employment. He suffered a lacerated forehead, a laceration of his right cheek, a sprain of his right elbow, and an abrasion of the left side of his neck.
He was seen by Dr. Charles R. Chesnutt, who treated his lacerations, and who was of the opinion that plaintiff had suffered a concussion. Dr. Chesnutt saw plaintiff a total of six times, and felt that he could return to work as of October 2, 1971. Plaintiff complained of headaches during this time, but on October 5, 1971, when last seen by Dr. Chesnutt, was complaining only of dizziness, which Dr. Chesnutt attributed to a sinus condition.
On October 19, 1971, plaintiff saw Dr. Lloyd R. Champagne, complaining of headaches and dizziness. Dr. Champagne saw plaintiff a total of four times through December 27, 1971, and treated him for the headaches and dizziness. He diagnosed plaintiff’s condition as post-concussion syndrome. On March 30, 1972, this suit was filed, with Dr. Champagne acting as plaintiff’s attorney.
Plaintiff saw Dr. William Rhea on March 8, 1972, complaining of dizzy spells *302 and headaches. Dr. Rhea made no examination or treatment of the plaintiff but referred him to Dr. Dean Moore. Dr. Moore was not called to testify, and no report from him was filed. Plaintiff also saw Dr. William Fisher, but Dr. Fisher had no record of his examination or treatment of plaintiff, and could not testify. He did cause an electroencephalogram to be made of plaintiff, which proved to be normal.
Plaintiff next saw Dr. A. F. Breazeale, Jr. on August 3, 1972, complaining of headaches. He was treated but failed to improve and was last seen on August IS, 1972. Dr. Breazeale’s examination of plaintiff’s eyes on August 3 revealed no significant abnormalities.
Dr. Sam L. Levert, a neurologist, saw plaintiff on October 2, 1972, with complaints of pain centering around his right eye, and a decrease of vision and sensation of glare in his right eye. He found plaintiff’s visual acuity in his right eye to be 20/100, and the pupil thereof to be dilated and minimally reactive to light. He found no neurological deficit, and thought it unlikely that the headaches represented a postconcussion syndrome. Plaintiff told Dr. Levert that he was unaware of any eye difficulty until it was pointed out to him by Dr. Levert.
Plaintiff was seen on October 24, 1972, by Dr. Roy Regan, who had substantially the same findings as Dr. Levert relative to the right eye. He was unable to correlate the headaches with the accident, and said that plaintiff was not disabled as a result of the headaches.
Plaintiff was then seen on October 27, 1972, three days before the trial, by Dr. George J. Azar, Sr., an opthalmologist. He gave a history of headaches on the right side since the accident, and a decrease in vision in his right eye since four or five months after the accident. He said his decrease in vision was getting worse, and that he suffered pain in the eye on exposure to light or glare. Dr. Azar found the vision in the right eye to be 20/200, and the pupil thereof to be dilated to 6 millimeters. He also noticed a cataract. He was of the opinion that plaintiff was unable to work as a truck driver because of his loss of vision. He stated that the accident of September 22, 1971, when plaintiff struck his head, could have caused the condition, which he felt was traumatically induced. He felt that the eye condition could have accounted for the headaches, but was unable to account for plaintiff’s complaints of dizziness. Dr. Azar further testified that, if traumatically induced, plaintiff’s eye condition would have manifested itself within a week of the accident.
Plaintiff’s own testimony is that he was healthy until the accident, and that he suffered from headaches and dizziness thereafter, and from decreasing vision starting several months thereafter.
The trial judge found that, since the eye condition did not manifest itself until October, 1972, when discovered by Dr. Levert, and since Dr. Azar testified that, if caused by the accident it would have manifested itself within a week thereafter, the eye condition was not caused by the accident. He further concluded that the headaches arose from the same cause as the eye condition.
We find no error in this conclusion. As late as August 3, 1972, plaintiff was unaware of any eye condition, and Dr. Brea-zeale’s examination on that date failed to reveal any significant abnormalities of the eyes. These facts, coupled with Dr. Azar’s testimony that a traumatically induced eye condition of this type would manifest itself within a week of the injury, make it clear that plaintiff’s disability, arising from his loss of vision, is not causally connected with the accident of September 22, 1971.
The record does not support the conclusion that the headaches and dizziness originally complained of by plaintiff were disabling at any time after plaintiff returned to work following the accident. *303 Only Dr. Champagne testified to any disability, and we give little weight to his testimony in the light of his legal representation of the plaintiff in this case.
The judgment appealed from is therefore affirmed, at plaintiff’s cost.
Affirmed.